COMPOUND PRODUCTS CORPORATION, Respondent, *v.* CITY OF NEW YORK, Appellant.

First Department, February 26, 1943.

*Nelson Rosenbaum* of counsel (*Edmund H. H. Caddy* with him on the brief; *William C. Chanler, Corporation Counsel*), for appellant.

*Stanley Bogart* of counsel (*Murray C. Karp* with him on the brief; *Bogart & Lonergan,* attorneys), for respondent.

*Per Curiam.* While the contract made a general reference to a so-called " final certificate " neither the contract nor the relevant provisions of the Administrative Code of the City of New York provided for the filing of any final certificate. The so-called " final certificate " relied on was merely the last in order of time of payment vouchers certified by the head of department. Administrative Code, section 343-5.0 does not apply to a contract such as this for supplies furnished. Section 343-4.0, which does apply to a contract for supplies, does not require any final certificate. The trial court did not err in denying defendant's motion for a directed verdict.

We think, however, that the court erred in the charge made at plaintiff's request that if defendant " had inspected the Polarflow upon the delivery thereof " and knew the ingredients and used the same with such knowledge, there was no warranty. This was not a purchase merely by trade name. Bidders were required to submit a complete chemical analysis and physical description of the product and plaintiff did so on August 16, 1939. That analysis failed to disclose the large quantity of calcium chloride in the product and also affirmatively represented that there was no corrosive effect whatever on metals. The first delivery was on October 11, 1939, of 1,200 gallons; the second on November 4th for 1,200 gallons, the total being almost the entire contract requirement. Mere inspection of this chemical antifreeze solution without chemical analysis would not reveal its ingredients and there is no proof that on such deliveries defendant knew the formula or the ingredients or at the time had any chemical analysis except the plaintiff's analysis above mentioned. Defendant's own chemical analysis was not procured

until November 16, 1939, and revealed that the product contained 34.1% of calcium chloride. At least until defendant knew the ingredients and their effect, the warranty survived. Such knowledge was not shown at the time of the deliveries mentioned.

We think also that the jury's eleven-to-one verdict in plaintiff's favor for the entire amount demanded in the complaint is clearly against the weight of the evidence. While this issue was not briefed, it was raised by defendant's motion to set aside the verdict as against the evidence and the weight of the evidence. Our examination of the record convinces us that the motion should have been granted. By the weight of the credible evidence, defendant established the corrosive effect of the solution on certain metal parts of the cars and extensive damage caused thereby.

The judgment appealed from should be reversed and a new trial granted, with costs to the appellant to abide the event.

MARTIN, P. J., UNTERMYER, DORE, COHN and CALLAHAN, JJ., concur.

Judgment unanimously reversed and a new trial ordered, with costs to the appellant to abide the event.